NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS E. DANDRIDGE,<br><br>                                 **Plaintiff,**<br>v.<br><br>RAYTHEON COMPANY &<br>RAYTHEON COMPANY PENSION<br>PLAN FOR SALARIED EMPLOYEES,<br><br>                                **Defendants.** | Civil Action No. 08-4793 (WJM)<br><br>**OPINION** |

**FALK, U.S.M.J.**

The issue to be decided is the scope of discovery in this case governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*. The parties have submitted five letters on the issue. Plaintiff argues that recent Third Circuit and Supreme Court authority support his request for discovery beyond the administrative record. Defendants counter that this matter is a simple ERISA pension dispute to be decided under the "arbitrary and capricious" standard of review and that no discovery is permitted under the controlling case law. For the reasons that follow, the Court concludes discovery in an ERISA benefit dispute is not strictly limited to the administrative record. However, in this case, Plaintiff may conduct discovery only into the scope and impact of Defendants' structural conflict of interest and certain alleged procedural irregularities.

I.   **BACKGROUND**

Plaintiff, Curtis Dandridge ("Plaintiff"), filed this action seeking review of a pension benefit determination rendered by Defendant Raytheon Corporation ("Raytheon") under the terms of an employee pension benefit plan maintained by his former employer ("the Plan"). The Plan is an employee pension plan and is governed by ERISA.

Plaintiff was employed by Raytheon Corporation ("Raytheon") from 1965 to 2007 as an electrical engineer. He retired from the company on or about June 29, 2007. Upon his retirement, Plaintiff sought pension benefits. Plaintiff's pension benefit is calculated based upon the "Final Average Compensation" that he received over the last 60 consecutive months of employment. (Compl. ¶ 9.) The Plan calculates prior monthly earnings by taking into account various forms of compensation, including "any Incentive Compensation paid or awarded and deferred under the programs listed in Schedule 1 to the main text of the Plan." (Compl. ¶ 10.) Schedule 1 to the Plan defines "Incentive Compensation" to include "Achievement Award Program[s]." (Id.)

In or about November 2004, Plaintiff was assigned to a project at Beale Airforce Base in California. (Compl. ¶ 12.) In connection with the assignment, Plaintiff was provided with a letter that states:

> A completion bonus equal to 50% of base pay earned while on assignment while at Beale will be paid upon ***achievement*** of the milestones to which you contribute, as determined by the Raytheon IDS VP Missile Defense Business Area and as follows:
>
> A. GMD Developmental Test and Evaluation (DT&E) achieved by 8/15/04;
> B. Legacy DT&E achieved by 9/30/04;
> C. Final DT&E achieved by 2/28/05.
>
> If you contribute to the achievement of more than one milestone by the dates indicated above, the completion bonus for the second

2

> milestone achieved will be 50% of base pay earned since the previous milestone date as indicated above. If the milestones are not reached by the dates indicated above, the completion bonus will be paid as determined by the Raytheon IDS VP Missile Defense Business Area.

(Compl. ¶ 14.)

Plaintiff met the first two achievements set forth above and was awarded $54,358. (Compl. ¶ 17.) Following his retirement, Plaintiff was informed that the calculation of his pension benefit would not include the $54,358 in payments. Plaintiff administratively appealed the determination pursuant to the terms of the Plan, which was denied. (Compl. ¶¶ 21-22.) As a consequence, Plaintiff filed the present action seeking the payment of benefits under an ERISA plan. In particular, Plaintiff seeks to recover approximately $450 per month that he alleges was not included in the calculation of his pension benefit.

Plaintiff now seeks wide-ranging discovery, including discovery regarding perceived structural and procedural conflicts. Structural conflicts of interest focus on the financial incentives created by the way a particular plan is funded and administered. See, e.g., Post v. Hartford Life Ins. Co., 501 F.3d 154, 161 (3d Cir. 2007), *overruled on other grounds by*, Estate of Kevin Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Procedural conflicts focus on how the administrator treated a particular claimant. See id. The discovery sought goes far beyond the proper inquiry in this case, which is limited to whether the administrator's interpretation of the Plan was reasonable. See Nash v. Mercedes-Benz, USA, 489 F. Supp. 2d 411, 416-17 (D.N.J. 2007) (Martini, J.)

This motion raises three questions. First, in the Third Circuit, is discovery ever permitted beyond the administrative record in an ERISA benefit case. Second, assuming discovery is permitted, whether discovery is appropriate under the facts of this case. Third, are plaintiff's discovery requests appropriate. The Court will address these questions *seriatim*.

3

**II.	THIRD CIRCUIT LAW ON THE SCOPE OF DISCOVERY**

This is an action seeking the payment of benefits pursuant to the terms of an ERISA benefit plan. The default standard of review applicable to an ERISA benefit determination is *de novo*. See Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 111 (1989). However, if the unambigious terms of the Plan vest the plan administrator with discretionary authority to interpret the terms of the Plan and render benefit determinations, the applicable standard of review is "arbitrary and capricious." Estate of Kevin Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Under the arbitrary and capricious standard of review, the decision of a plan administrator should be upheld so long as it is not "without reason, unsupported by substantial evidence, or erroneous as a matter of law." Abnathya v. Hofmann-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

Here, both parties agree that the proper standard of review is the arbitrary and capricious standard.[1] The Third Circuit has consistently held that a court's review of a claim for benefits under the arbitrary and capricious standard is "limited to that evidence that was before the administrator when it made the decision being reviewed." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997); Abnathya, 2 F.3d 40, 48 n.8 (3d Cir. 1993); see also Johnson v. UMWA Health & Ret. Funds, 125 Fed. Appx. 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the Plan administrator, which cannot be supplemented during the litigation."). The concept of limiting a court's review to the administrative record derives from the nature of an ERISA review proceeding and the administrative appeal process, which is meant to encourage internal and inexpensive resolution of benefit claims. See Grossmuller v. Int'l Union, 715 F.2d 853, 857 (3d Cir. 1983).

---

[1] See, e.g., Plaintiff's Letter dated November 23, 2009, at 7 ("Where, as here, an employee benefit plan provides a claim fiduciary with discretionary authority over administration of the plan, ERISA provides that the fiduciary's decisions are reviewed under a deferential arbitrary and capricious standard.").

Further, the Third Circuit has required that parties prior to bringing ERISA benefit disputes exhaust their administrative remedies, i.e., administrative appeals, prior to bringing suit. See Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002). This requirement is meant to ensure a full and complete record and eliminate the need for further discovery. See O'Sullivan v. Metro. Life Ins. Co., 114 F. Supp. 2d 303, 309 (D.N.J. 2000) ("The Court and the parties have found no applicable authority that would support looking beyond the administrative record when deferentially reviewing a plan administrator's factual determinations that a claimant is ineligible for benefits. The purpose in limiting the evidential scope of judicial review is to encourage the parties to resolve their dispute at the administrative level. If district courts permitted claimant's to present additional evidence in reviewing benefit determinations, the administrator's review of claims would be circumvented.").

### III.  AUTHORITY SUPPORTING LIMITED DISCOVERY

The Third Circuit has often reiterated that arbitrary and capricious reviews of benefit determinations should occur on the basis of the administrative record assembled before the claim administrator. However, Plaintiff relies upon authority from other districts and dicta from the United States Supreme Court's decision in Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008) to argue that discovery is permissible beyond that set forth in the administrative record. His discovery can reasonably be construed to relate to three topics: (1) Defendants' structural conflict of interest; (2) perceived bias and irregularity in the review of his claim; and (3) the merits of Defendants' claim determination.

Taking the last category first, to the extent Plaintiff seeks discovery into the *merits* of the Defendants' claim determination, it is clear that such discovery is prohibited. See, e.g., Mainieri

5

& Iarolo v. Bd. of Trustees of the Operating Eng'rs Local 825 Pension Plan, 2008 WL 4224924, at *3 (D.N.J. Sept. 10, 2008) ("This Court agrees . . . [that] discovery can be taken with regard to issues that raise a good-faith allegation of procedural bias or structural conflict of interest-but not for matters that merely speak to the merits of the administrator's decision."); see also e.g., Ford v. Motorolla, Inc., 298 Fed. Appx. 560, 561 (9th Cir. 2008) ("Though the district court may review extrinsic evidence of a conflict of interest, its determination of the merits still must be based on the administrative record."). Unlimited discovery into pure merit issues would undercut the purpose of an ERISA fiduciary's claim determination, and the deferential standard of review afforded such determinations under Third Circuit and Supreme Court jurisprudence. The Court is not aware of any Third Circuit precedent, pre or post-*Glenn*, which permits discovery into the *pure merits* of a claim determination.

### A. Structural Conflicts

Discovery into structural conflicts of interest is different. In Glenn, the United States Supreme Court decided two issues: (1) whether the fact that the plan administrator both evaluates claims for benefits and pays benefit claims creates a conflict of interest; and (2) if a conflict is found, how the conflict should be taken into account on judicial review of a benefit determination. See 128 S. Ct. at 2348-50. The Supreme Court held there is a structural conflict of interest when the plan administrator both evaluates claims for benefits and pays benefit claims. Id. at 2348. The Court further held that conflicts are but one factor to be considered by the court reviewing an administrator's benefit determination. Id. at 2351.

While Glenn was not a case about discovery, the opinion does contain certain language that could arguably be interpreted to reject special evidentiary rules when balancing conflicts of interest.

The Court said:

> Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts-which themselves vary in kind and in degree of seriousness-for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

Id. at 2351.

The above quoted language has lead to a split in authority among courts over whether discovery beyond the administrative record is permitted in ERISA benefit cases. Cases that have concluded that Glenn does open the door to discovery beyond the administrative record include: Denmark v. Liberty Life Ins. Co., 566 F.3d 1, 10 (1st Cir. 2009) ("The majority opinion in *Glenn* fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict."); Kalp v. Life Ins. Co. of N. Am., No. 08-1005, 2009 WL 261189 (W.D. Pa. Feb. 4, 2009); Burgio v. Prudential Life Ins. Co. of Am., 253 F.R.D. 219 (E.D.N.Y. 2008); and Hogan-Cross v. Metro. Life Ins. Co., 568 F. Supp. 2d 410, 414 (S.D.N.Y. 2008). Courts that have concluded that Glenn does not alter the pre-existing rules with respect to discovery include: Weiss v. Unum Life Ins. Co., No. 02-4249, 2008 WL 518857, at *4 (D.N.J. Dec. 10, 2008); Sanders v. Unum Life Ins. Co., No. 08-421, 2008 WL 4493043, at **3-4 (E.D. Ark. Oct. 2, 2008); and Christie v. MBNA Group Long Term Disability Plan, No. 08-44, 2008 WL 4427192, at *2 (D. Me. Sept. 25, 2008).

This Court is not convinced that Glenn opened the door to full-blown discovery in all ERISA benefit cases, or that it entirely overrules pre-existing Third Circuit law on the proper scope of discovery. However, this Court agrees with the First Circuit Court of Appeals in Denmark v. Liberty Life Ins. Co., 566 F.3d 1, 10 (1st Cir. 2009) that Glenn supports limited discovery directed to the issue of a *structural* conflict of interest. By rejecting special evidentiary and procedural rules when evaluating conflicts, Glenn suggests allowing for limited discovery. This is because Glenn contemplates a legitimate weighing of a structural conflict of interest in connection with arbitrary and capricious review of an administrator's decision. In order to give this review *actual meaning*, limited discovery is reasonable. See Denmark, 566 F.3d at 10 ("The majority opinion in *Glenn* fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict.").

Limited discovery into structural conflicts of interest is also in accord with pre-existing law in the Third Circuit which had previously, in *dicta*, suggested that discovery into structural conflicts, and in particular into "the sophistication of the parties, the information accessible to the parties," and the "current status of the fiduciary," may be appropriate. See Pinto v. Reliance Standard, 214 F.3d 377, 392 (3d Cir. 2000). Thus, discovery beyond the administrative record is permissible if such discovery is directed toward uncovering the extent to which a structural conflict record has morphed into an actual conflict that could have influenced the administrator's discretionary decision.

      **B.**    **Procedural Conflicts**

With respect to discovery targeted toward *procedural* conflicts, including fraud, mistake and bias, Glenn does not appear to impact discovery. As stated, discovery was not generally the issue

8

in Glenn, and certainly not with respect to bias, mistake or fraud. Thus, courts in this district have rejected the implication that Glenn supports broad discovery into issues of bias and mistake. See, e.g., Weiss, 2008 WL 518857, at *4. However, the Third Circuit, without referencing Glenn, recently held in a "not precedential" opinion that allegations of fraud or mistake are subject to discovery. See Gardner v. Unum Life Ins. Co., 2009 WL 4457515, at *5 n.4, *8 (3d Cir. Dec. 4, 2009). Despite that, the unpublished Gardner decision does not provide specific parameters for such discovery. Thus, the question arises in light of prior precedent whether such discovery is automatic or what constitutes a sufficient basis to expand the administrative record.

Prior to Gardner, district courts in this Circuit had settled on a standard that allowed for discovery into questions of mistake, bias or fraud upon a showing of a "good faith basis" for alleging same. See, e.g., Mainieri & Iarolo, 2008 WL 4224924, at *3; Holt v. Prudential Ins. Co. of Am., No. 05-1529, 2007 WL 1071971, at **3-4 (D.N.J. Apr. 5, 2007); Delso v. Tr. of Ret. Plan for the Hourly Employees of Merck & Co., Inc., No. 04-3009, 2006 WL 3000199, at **2-4 (D.N.J. Oct. 20, 2006); cf. Killian v. Johnson & Johnson, No. 07-4902, 2009 WL 537666, at *4 (D.N.J. Mar. 4, 2009) ("Had the litigation progressed to the point where such a decision regarding the proper scope of discovery had been made, Plaintiff would have had to present a good-faith allegation of a procedural irregularity or bias that could have been found within the administrative record to warrant the additional discovery-related work.").

The court in Delso appears to be the only district court in New Jersey to allow discovery into allegations of fraud or mistake in an ERISA benefit case. There, the court was presented with an affidavit and email from individuals involved in the consideration of the plaintiff's claim. See id. at *4. Both the affidavit and email provided some indication that the plaintiff's claim was not

9

considered entirely on its merits and that other considerations may have been the driving force. In particular, the email stated "[m]y greatest fear is that by voting to approve this retirement we will open up a can of worms that we can never close again." Id. at *4. Only when presented with this type of almost "smoking gun" style evidence did the Court permit discovery beyond the administrative record. See id.

Gardner alone does not suggest wholesale abandonment of pre-existing discovery standards in ERISA cases of this type.[2] However, it can be argued that, at a minimum, Gardner is persuasive as a recent decision from a higher court, and that the threshold showing for bias and fraud-related discovery should not necessarily be so stringent. Thus, this Court concludes that some discovery into alleged procedural irregularities is permitted in ERISA cases, but only when the party seeking discovery has made at least some minimal showing of bias or irregularity that could have impacted the administration of the claim.

## IV.    DISCOVERY IN THIS CASE

Plaintiff in this case seeks the following discovery: 23 interrogatories; 17 requests for admissions; 7 document requests; and 2 depositions. This discovery seeks information beyond the effect of any structural conflict of interest or any perceived bias, and encroaches on the merits of the

---

[2] While Gardner suggests that discovery into fraud and mistake is permitted, it is a not precedential opinion, and thus, without further guidance from the Third Circuit, this Court cannot conclude that full-scale discovery into fraud, bias, and mistake is permitted in every case because such a position would appear to conflict with pre-existing Third Circuit authority. See, e.g., In re Merck & Co., Inc, Sec. Litig., 432 F.3d 261, 274 (3d Cir. 2005) (noting "precedential cases cannot be overruled unless by the Circuit *en banc*."); cf. Wallace v. Abel, 318 Fed. Appx. 96, 98 n.4 (3d Cir. 2009) ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.") (quotation omitted).

underlying claim. If permitted, the discovery would transform this action from a review proceeding to an evidentiary proceeding with full discovery. Moreover, it would undercut the discretionary authority of the plan administrator in rendering the Plaintiff's pension benefit determination and would effectively change the standard of review the Court must apply to a benefit determination conducted under ERISA.

Discovery substantially more limited than that currently sought is, however, permissible. Defendants concede that they suffer from a perceived structural conflict of interest in this case. Thus, based upon Glenn, discovery is appropriate and will be permitted into the scope and impact of any conflict of interest that could have impacted Defendants' evaluation of Plaintiff's claim.

Plaintiff's submissions do not justify full-scale discovery into alleged fraud or bias. His bases for seeking such discovery are essentially the misnumbering of certain pages in the administrative record; his assertion that certain emails appear to be redacted; and his general, unsupported assertion that the use of certain "pay codes" in resolving his claim raise suspicion. (See Pl.'s Letter dated November 23, 2009, at 5.) None of these alleged irregularities provide a sufficient indica of fraud, bias or mistake to permit unlimited discovery. Moreover, merely pointing to something in the administrative record, claiming that it is confusing, and then seeking discovery based on the supposed confusion is beyond the limited discovery contemplated in ERISA cases. Allowing for fraud or bias based discovery on the evanescent allegations here would essentially allow for discovery in every case based on a Plaintiff's bald allegation of wrongdoing or alleged bias. This is not supported by Glenn, Gardner, or any other controlling authority from the Third Circuit. That said, Plaintiff should be entitled to at least some information and explanation regarding the alleged discrepancies he has identified. This is only fair, as the Court is entitled to consider any

irregularities, to the extent they are present, when evaluating the reasonableness of the administrator's decision in this case.  See Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004).

In sum, limited discovery beyond the administrative record will be allowed but controlled.  Such discovery must focus on the Defendants' structural conflict of interest.  Plaintiff may also seek an explanation for the alleged misnumbering of pages in the record, the redaction of any emails, and the use of certain "pay codes" in the evaluation of his claim. Plaintiff's discovery requests are not specifically focused on these issues, and the Court cannot determine from the manner in which the motion was presented the propriety of each of Plaintiff's individual requests.  Therefore, Plaintiff and Defendants should confer and determine whether they can agree to limited discovery directed toward Defendants' conflict of interest and the other information outlined in this paragraph.  If they are unable to reach an agreement on the issue, they should contact the Magistrate Judge who will provide the parties with a workable format for presenting the dispute to the Court for resolution.

V.     CONCLUSION

For the above stated reasons, Plaintiff's application to compel discovery will be **granted in part and denied in part**.  An appropriate Order implementing this Opinion will be entered.


                                                            s/Mark Falk
                                                            **MARK FALK**
                                                            **United States Magistrate Judge**

Dated: January 26, 2010